# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| TRACIE DUPELL | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| WALMART STORES EAST, LP | : | NO. 19-610 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                              **August 28, 2019**

In this premises liability suit, the plaintiff Tracie Dupell claims she slipped and fell on loose candy on the floor of the defendant Walmart Stores East, LP's store. Moving for summary judgment, Walmart argues that the undisputed evidence shows that there was nothing on the floor, and if there had been, it had neither actual nor constructive notice of it.

After reviewing the record, we conclude that there is no evidence that there was any harmful condition that caused Ms. Dupell to fall. Therefore, we shall grant Walmart's motion for summary judgment.

## Background[1]

On June 4, 2018, Ms. Dupell was in the self-checkout area of a Walmart store in Levittown, Pennsylvania, when she fell and injured her right leg.[2] Video footage shows

---

[1] The facts are garnered from the parties' recitation of the facts and the exhibits attached in support of the summary judgment briefing. *See* Def.'s Statement of Facts (ECF No. 16) ("DSOF"); Pl.'s Resp. in Opp'n to Def.'s Statement of Facts (ECF No. 17) ("PRDSOF"). Paragraph 6(c) of the Scheduling Order states that "[a]ll material facts set forth in the Statement of Undisputed Facts required to be served by the movant shall be taken by the Court as admitted unless controverted by the opposing party." Paragraph 6(d) states that "[s]tatements of material facts in support or in opposition to a motion for summary judgment shall include specific and not general references to the parts of the record which support each statement." Scheduling Order (ECF No. 9). All facts are undisputed unless otherwise noted. Despite these instructions, the plaintiff contends there are disputed facts, but fails to cite specific, contradictory facts in the record.

[2] DSOF ¶ 2.

her suddenly collapsing.[3] Walmart employees immediately came to her aid and called an ambulance.[4] Sixteen minutes later, paramedics arrived, assessed her, and transported her to the hospital.[5] Her husband arrived after the paramedics.[6]

In her answers to interrogatories, Ms. Dupell claimed that she slipped on M&M candy.[7] Yet, in her deposition, she testified she does not know what caused her to fall.[8] She relies on her husband's telling her later that he saw "an M&M on the floor" when he arrived at Walmart, but also subsequently testified that she does not know how many M&Ms Mr. Dupell saw on the floor.[9] According to Ms. Dupell, he did not specify where on the floor he saw them.[10]

Ms. Dupell did not see any M&Ms on the floor before or after falling.[11] She testified that her friend, whom she believes witnessed the fall, did not mention that there were any M&Ms on the floor.[12] Ms. Dupell further testified that she did not report the existence of

---

[3] DSOF ¶¶ 10, 23; Walmart Security Video at 11:29:47 p.m., Def.'s Mot. for Summ. J., Ex. I (ECF No. 16-11).

[4] DSOF ¶ 5; Dupell Dep. 30-31, Def.'s Mot. for Summ. J., Ex. C (ECF No. 16-5).

[5] DSOF ¶ 11; Walmart Security Video at 11:45:45 p.m.

[6] DSOF ¶ 15; Dupell Dep. 28-29.

[7] DSOF ¶ 2; Pl.'s Answer to Interrogatories ¶ 3, Def.'s Mot. for Summ. J., Ex. B. (ECF No. 16-4).

[8] *See* Dupell Dep. 29 ("Q: And what do you believe caused you to fall? A: I believe I slipped, but I didn't like look at the ground, you know, I wasn't thinking to look at the ground. Q: Did you see anything on the floor before you fell. A: I did not.").

[9] DSOF ¶ 16; Dupell Dep. 37-38, 85-86.

[10] DSOF ¶ 16; Dupell Dep. 37-38, 85-86.

[11] DSOF ¶ 3; Dupell Dep. 29, 85.

[12] DSOF ¶ 4; Dupell Dep. 36-37. Dupell's friend has since passed away and was unable to provide her own testimony in this matter. DSOF ¶ 4, n.1.

M&Ms to any Walmart employees or the EMS workers.[13] There is no reference to M&Ms in the Walmart incident and witness reports, or the EMS report.[14] Each of the incident reports notes that Ms. Dupell stated that her leg or ankle suddenly "buckled," "rolled," or "gave out" underneath her.[15]

Ms. Dupell had an injury to her right knee three months before the Walmart incident.[16] For this injury, she had an X-ray, MRI, drainage, and a cortisone injection to her knee.[17] She had not yet begun recommended therapy.[18] Ms. Dupell informed a Walmart worker that her "leg was hurt and that her leg's been hurting her for a while, so it caused her to fall and hit the ground."[19]

The video footage does not show any debris on the floor or any worker cleaning the area in the hour leading up to and the hour after the fall.[20] The customer service associate on duty testified that there were no M&M candies for sale or displayed in the area where Ms. Dupell fell.[21]

---

[13] DSOF ¶¶ 5-6; Dupell Dep. 30-31, 36-37, 86.

[14] DSOF ¶¶ 7, 12; Walmart Reports, Def.'s Mot. for Summ. J., Exs. C, D, E, F, G (ECF No.16-6 to 16-9); EMS/Ambulance Report, Def's Mot. for Summ. J., Ex. H (ECF No. 16-10).

[15] DSOF ¶¶ 7, 12; Walmart Reports; EMS/Ambulance Report.

[16] DSOF ¶ 9; Dupell Dep. 41-44, 48.

[17] DSOF ¶ 9; Dupell Dep. 41-44, 48.

[18] DSOF ¶ 9; Dupell Dep. 41-44, 48.

[19] Smith Dep. 57-59, Pl.'s Opp'n, Ex. C (ECF No. 17-5).

[20] DSOF ¶ 24; Walmart Security Video.

[21] Smith Dep. 60.

Ms. Dupell brought suit against Walmart, alleging that because she was a business invitee, Walmart had a duty to maintain and keep its store in a safe condition for her.[22] She claims Walmart negligently "allowed and permitted dangerous and unsafe conditions to exist, specifically, lose [sic] candy on the ground which directly results in plaintiff's injuries."[23]

Walmart asserts that Ms. Dupell has offered no evidence to establish that Walmart was negligent.[24] It contends there is no evidence that M&Ms or any substance or object were present when she fell.[25]

In opposing the motion, Ms. Dupell seeks to create an issue of fact by contending that her husband saw candy on the floor when he arrived later. Ms. Dupell argues that this shows that Walmart knew or should have known about the condition.[26] She contends that there are multiple genuine issues of material fact concerning whether there were M&Ms on the floor and whether Walmart knew or should have known about the M&Ms.[27] Yet, she can point to none.

## Standard of Review

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Judgment will be entered against a party who fails to sufficiently

---

[22] Compl. ¶¶ 5-6 (ECF No. 1).

[23] *Id.* ¶¶ 8-9.

[24] Def.'s Mem. in Supp. of Mot. to Dismiss at 6-8 (ECF No. 16-1).

[25] *Id.*

[26] Pl.'s Opp'n to Mot. to Dismiss at 2-3 (ECF No. 17).

[27] *Id.*

4

establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In examining the motion, we must draw all reasonable inferences in the nonmovant's favor. *InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 159-60 (3d Cir. 2003).

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party. FED. R. CIV. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which it bears the burden of production. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

**Analysis**

Under Pennsylvania law, a possessor of land is subject to liability for physical harm caused to invitees by a condition on the land only if he:

(a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitees;

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it; and

(c) fails to exercise reasonable care to protect them against the danger.

5

*Carrender v. Fitterer,* 469 A.2d 120, 123 (Pa. 1983) (citing RESTATEMENT (SECOND) OF TORTS § 343)*; Kirschbaum v. WRGSB Assocs.*, 243 F.3d 145, 152 (3d Cir. 2001). Simply put, "[a]n invitee must prove either the proprietor of the land had a hand in creating the harmful condition, or he had actual or constructive notice of such condition." *Estate of Swift v. Ne. Hosp. of Phila.*, 690 A.2d 719, 722 (Pa. Super. Ct. 1997) (citing *Moultrey v. Great Atl. & Pac. Tea Co.*, 422 A.2d 593, 598 (Pa. Super. Ct. 1980)).

The owner of a store is not liable for injuries sustained by a business invitee caused by a condition of which it had neither actual nor constructive notice. In other words, to prevail, the plaintiff must prove that the owner had actual notice of the condition or the condition existed long enough that the owner, in the exercise of reasonable care, should have known of it. *Moultrey*, 422 A.2d at 593. The mere existence of the condition or the occurrence alone is not evidence of a breach of the owner's duty of care.

If the plaintiff shows that the owner caused the harmful condition, she need not prove notice. In the absence of any evidence that the harmful condition was caused by the owner, the plaintiff must show that the owner had actual or constructive notice of it. Therefore, the plaintiff must prove that either the owner created or had actual or constructive notice of the harmful condition.

To establish constructive notice of a dangerous condition, Ms. Dupell must show that the M&Ms on the floor "existed for such a length of time that in the exercise of reasonable care the owner should have known of it." *Moultrey*, 422 A.2d at 596. If the plaintiff fails to proffer evidence showing how long the dangerous condition existed prior to the incident causing her injury, a jury could only speculate or guess how long it had been there. *See McDowell v. Moran Foods, LLC*, 680 F. App'x 72, 75 (3d Cir. 2017) ("[A]

6

plaintiff's failure to provide evidence with respect to the timing of the dangerous condition [i]s [often] dispositive because a jury is not permitted to speculate or guess; conjecture, guess or suspicion do not amount to proof.") (citing *Lanni v. Pa. R.R. Co.*, 88 A.2d 887, 889 (Pa. 1952)); *see also Porro v. Century III Assocs.*, 846 A.2d 1282, 1286 (Pa. Super. Ct. 2004) (affirming summary judgment where plaintiff testified that he did not know how long the substance he slipped on was present); *Swift*, 690 A.2d at 722 (affirming summary judgment where there was no evidence as to how the water plaintiff slipped on arrived nor how long the dangerous condition had existed).

Ms. Dupell does not contend that Walmart created the harmful condition. Instead, she argues that Walmart was negligent because it knew or should have known about the harmful condition, and it did not keep its store in a safe condition for her.[28] However, she proffers no evidence to support her conclusory statements.

It is undisputed that Ms. Dupell fell at the Walmart. Video footage shows her suddenly collapsing.[29] The same video does not reveal candy or any substance on the floor. Additional footage indicates that there was no need for workers to clean or clear anything in the area of the fall during the hour following the fall.[30] There were no M&Ms for sale in the area where Ms. Dupell fell.[31]

No one saw M&Ms on the ground prior to the fall. Nor did anyone at the scene see any immediately afterwards. Ms. Dupell herself did not notice any M&Ms on the floor

---

[28] Compl. ¶¶ 5-6, 8-9.

[29] Walmart Security Video at 11:29:47 p.m.

[30] DSOF ¶ 24; Walmart Security Video.

[31] Smith Dep. 60.

7

at any point.[32] Her friend did not mention that anything was on the floor.[33] Ms. Dupell did not tell any Walmart employees or the EMS workers that M&Ms on the ground had caused her fall.[34] Rather, she reported that her leg or ankle suddenly "buckled," "rolled," or "gave out."[35] The Walmart incident reports, witness statements, and the EMS report contain no mention of M&Ms or anything else on the floor.[36]

Ms. Dupell attempts to create a disputed fact about whether there were M&Ms on the floor by contending her husband had seen a single M&M there. She made this claim in her deposition. However, her husband was not deposed. Nor did Ms. Dupell provide an affidavit from Mr. Dupell.

Even if Mr. Dupell saw an M&M, his observation does not establish it was there when his wife fell. He arrived at the scene *after* the paramedics.[37] He did not specify where the M&M was.[38]

Ms. Dupell has not proffered any evidence that a harmful condition, M&Ms, existed. Even if she had, she has presented no evidence that Walmart knew of the condition before she fell. Nor has she shown how long the candy had been there, giving rise to Walmart's constructive notice of it.

---

[32] DSOF ¶ 3; Dupell Dep. 29, 85.

[33] DSOF ¶ 4; Dupell Dep. 36-37.

[34] DSOF ¶¶ 5-6; Dupell Dep. 30-31, 36-37, 86.

[35] DSOF ¶¶ 7, 12; Walmart Reports; EMS/Ambulance Report.

[36] DSOF ¶¶ 7, 12; Walmart Reports; EMS/Ambulance Report.

[37] DSOF ¶ 16; Dupell Dep. 37-38, 85-86.

[38] DSOF ¶ 16; Dupell Dep. 37-38, 85-86.

In summary, it is undisputed that Ms. Dupell was a business invitee, she fell, she did not see anything on the floor that caused her to fall, she told first responders and store employees that her leg buckled, she did not tell anyone that there was anything on the floor that caused her to fall, and no one in the area immediately after the fall saw anything on the floor, particularly, M&Ms. Even if there was evidence that M&Ms were on the floor, there was no evidence how they got there or how long they had been there. Therefore, Walmart is entitled to judgment as a matter of law.